USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/7/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x
UNITED STATES OF AMERICA          :

                                  :   SEALED
         - v. -                       INDICTMENT
                                  :
ALEXANDER MIKHAILIN,                  (S1) 12 Cr.
and YAKOV SHVARTSOVSKIY,          :
                                      **12 CRIM 904**
         Defendants.              :

- - - - - - - - - - - - - - - - - -x

## COUNT ONE

### ARMS EXPORT CONTROL ACT VIOLATION

The Grand Jury charges:

### THE ARMS EXPORT CONTROL ACT

1. At all times relevant to this Indictment, the Arms Export Control Act ("AECA") has authorized the President to control the export of "defense articles" deemed critical to the national security and foreign policy interests of the United States. Among other things, the AECA authorizes the President to designate items as "defense articles" by listing them on the United States Munitions List ("USML"). In addition, the AECA authorizes the President to require licenses for the export of defense articles and to promulgate regulations for the export of defense articles. Section 2778(c) of the AECA established criminal penalties for any violation of Section 2778 or any rule or regulation promulgated thereunder.

2. The United States Department of State ("State Department") implemented the statutory provisions of the AECA by

adopting the International Traffic in Arms Regulations ("ITAR"), Title 22, Code of Federal Regulations, Sections 120 to 130. These regulations, promulgated pursuant to Title 22, United States Code, Section 2778, require that an export license be obtained for the export of any items on the USML.

3. The USML includes, among other items, "image intensification and other night sighting equipment or systems specifically designed, modified or configured for military use."

### MEMBERS OF THE CONSPIRACY

4. ALEXANDER MIKHAILIN and YAKOV SHVARTSOVSKIY, the defendants, have at all times relevant to this Indictment been citizens of the United States residing in Brooklyn, New York. At all times relevant to this Indictment, neither MIKHAILIN nor SHVARTSOVSKIY has had a license to export defense articles.

### THE CONSPIRACY TO VIOLATE THE ARMS EXPORT CONTROL ACT

5. From at least in or about 2009, up to and including in or about 2012, in the Southern District of New York and elsewhere, ALEXANDER MIKHAILIN and YAKOV SHVARTSOVSKIY, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit offenses against the United States, to wit, to violate Title 22, United States Code, Sections 2778(b)(2) and (c).

6. It was a part and an object of the conspiracy that

ALEXANDER MIKHAILIN and YAKOV SHVARTSOVSKIY, the defendants, and others known and unknown, would and did willfully export and cause to be exported from the United States to Russia defense articles, without first obtaining from the Department of State a license or written authorization for such exports, in violation of Title 22, United States Code, Section 2778(b)(2).

### Overt Acts

7.  In furtherance of the conspiracy and to effect the illegal object thereof, ALEXANDER MIKHAILIN and YAKOV SHVARSOVSKIY, the defendants, and others not named herein, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

    a. Since at least 2009, ALEXANDER MIKHAILIN, the defendant, who travels frequently to the Russian Federation, has worked to obtain export-controlled devices for export from the United States to Russia.

        i. On occasions from at least 2009 until at least 2011, a co-conspirator based in Russia ("CC-1") bought night-vision devices and arranged for the devices to be shipped to MIKHAILIN in Brooklyn, New York.

        ii. On other occasions from at least 2009 until at least 2011, CC-1 sent MIKHAILIN e-mail messages containing apparent directions concerning night-vision devices to purchase.

iii. In addition, on occasions since at least 2009, CC-1 transferred money to MIKHAILIN so that MIKHAILIN could buy night-vision devices without it being revealed that the devices were being purchased for CC-1 outside the United States. For instance:

A. On or about August 31, 2009, the date on or about which MIKHAILIN bought night-vision equipment totaling approximately $900, CC-1 deposited approximately $1050 into MIKHAILIN's account with Paypal, an online payment system.

B. On or about October 23, 2009, the date on or about which MIKHAILIN purchased night-vision equipment totaling approximately $1499, CC-1 deposited approximately $1500 into MIKHAILIN's Paypal account.

C. On or about November 25, 2009, the date on or about which MIKHAILIN purchased night-vision equipment totaling approximately $4890, CC-1 deposited approximately $5000 into MIKHAILIN's Paypal account.

D. Later, including on occasions in or about early 2010, during months in which MIKHAILIN was purchasing night-vision devices, CC-1 caused money to be transferred to MIKHAILIN via wire transfers.

E. Subsequently, including on occasions in or about late 2010 and early 2011, MIKHAILIN made deposits of

cash totaling in excess of $70,000 into bank accounts in his name in the Southern District of New York.

    b. Since at least 2011, SHVARTSOVSKIY has worked to obtain export-controlled devices for export from the United States to Russia, which have been shipped in the first instance to SHVARTSOVSKIY in Brooklyn.

    i. On occasions since at least 2011, CC-1 bought night-vision equipment that he has arranged to be shipped directed to SHVARTSOVSKIY in Brooklyn, New York.

    ii. On at least one occasion in or about 2012, items that CC-1 purchased and that were sent to SHVARTSOVSKIY in the first instance were then provided to a co-conspirator not named herein ("CC-2") who then attempted to transport the items to Russia.

    A. In particular, in or about early January 2012, CC-1 purchased items including mount adapters for night-vision equipment and shipped those items to SHVARTSOVSKIY.

    B. On or about January 24, 2012, SHVARTSOVSKIY met with CC-2 a hotel in Queens, New York.

    C. On or about January 25, 2012, CC-2 traveled to the airport with luggage containing, among other items purchased by CC-1 and shipped to SHVARTSOVSKIY, mount adapters for night-vision equipment.

5

iii.   On other occasions since at least 2011, SHVARTSOVSKIY and CC-1 have communicated by e-mail, with SHVARTSOVSKIY providing CC-1 in some communications what appear to be invoices identifying particular items, a number of which are export-controlled night vision devices.

(Title 18, United States Code, Section 371.)

COUNT TWO

CONSPIRACY TO COMMIT MONEY LAUNDERING

The Grand Jury further charges:

8.   The allegations set forth in Paragraphs One through Seven of this Indictment are hereby realleged and incorporated as if set forth fully herein.

9.   From at least in or about 2009, up to and including in or about 2012, in the Southern District of New York and elsewhere, ALEXANDER MIKHAILIN, the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate Title 18, United States Code, Section 1956(a)(2)(A).

10.   It was a part an object of the conspiracy that ALEXANDER MIKHAILIN, the defendant, and others known and unknown, would and did transport, transmit, and transfer, and attempt to transport, transmit, and transfer, a monetary instrument and funds to a place in the United States from or through a place outside the United States with the intent to promote the carrying

6

on of specified unlawful activity, to wit, export control violations involving items controlled on the United States Munitions List established under section 38 of the Arms Export Control Act, Title 22, United States Code, Section 2778.

(Title 18, United States Code, Section 1956(h).)

<u>FORFEITURE ALLEGATION WITH RESPECT TO COUNT ONE</u>

11.  As a result of committing the offense charged in Count One of this Indictment, ALEXANDER MIKHAILIN and YAKOV SHVARTSOVSKIY, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real and personal, constituting or derived from proceeds obtained directly or indirectly as a result of the offense charged in Count One.

<u>Substitute Asset Provision for Count One</u>

12.  If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third person;

    c.  has been placed beyond the jurisdiction of the Court;

        d.    has been substantially diminished in value; or

        e.    has been commingled with other property which cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 981, Title 21, United States Code, Sections 853(p), and Title 28, United States Code, Section 2461, to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981(a)(1)(G) and 2332b(g)(5); Title 21, United States Code, Section 853; and Title 28, United States Code, Section 2461.)

### FORFEITURE ALLEGATION WITH RESPECT TO COUNT TWO

13.    As a result of committing the offense charged in Count Two of this Indictment, ALEXANDER MIKHAILIN, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real and personal, involved in the money laundering offense alleged in Count Two of this Indictment, and any property traceable to such property.

#### Substitute Asset Provision for Count Two

14.    If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

        a.    cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982, and Title 21, United States Code, Sections 853(p), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

_____
FOREPERSON

_____
PREET BHARARA
United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

ALEXANDER MIKHAILIN,
and YAKOV SHVARTSOVSKIY,

Defendants.

SEALED
INDICTMENT

S1 12 Cr.

(18 U.S.C. § 371, 22 U.S.C. § 2778(b)(2),
18 U.S.C. § 1956(a)(2)(A),
and 18 U.S.C. § 1956(h).)

PREET BHARARA
United States Attorney.

A TRUE BILL

Foreperson.